## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HOMEOWNERS FINANCE CO., | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:20-CV-01282 (JCH) |
| v. | : | |
| | : | |
| EDWARD M. LAMONT ET AL, | : | |
|     Defendants. | : | SEPTEMBER 20, 2021 |
| | : | |

**RULING ON DEFENDANTS' MOTIONS TO DISMISS (DOCS. NO. 9, 21, 23, and 24)**

## I.    INTRODUCTION

Plaintiff Homeowners Finance Co. ("Homeowners") brought this action, alleging

seven federal and state law claims arising from the tax sale of real property on which it

held a mortgage.  See Compl. at 16-21 (Doc. No. 1).[1]  Its claims are brought against

five defendants: Governor of Connecticut Edward M. Lamont, in his official capacity; the

City of Torrington, Connecticut; Robert Crovo, the former Tax Collector for Torrington, in

both his official and individual capacity; and Sharon and William Gilson,[2] who purchased

the real property in question at the tax sale.

---

[1] Plaintiff's Complaint includes duplicate paragraph numbers after paragraph 73.  As such, the court references page numbers when citing to the Complaint to avoid confusion.

[2] Plaintiff's claims against the Gilsons are not a model of precision.  As an initial matter, the Complaint contradicts itself as to whether it intends to name them as defendants.  Although the caption includes their names and Count Seven is brought against "Gilsons," they are not included as parties in the body of the Complaint, see Compl. 2-3, and Homeowners explicitly represents elsewhere that "Sharon Sharon [sic] and William Gilson . . . have not been made parties to this action."  Id. at 8.  In their Motion to Dismiss, the Gilsons argue, inter alia, that, given these deficiencies, "no claim against the Gilsons exists."  Defs. Sharon & William Gilson's Mem. in Supp. of Their Mot. to Dismiss at 7 ("Gilson Mem.") (Doc. No. 24-1).

On this narrow ground, the court disagrees.  In determining whether an entity or individual has properly been made a party to an action, courts "'look to the caption, pleadings, service of process, and other indications of plaintiff's intent'" to name them as parties.  See Steinmetz v. Danbury Visiting Nurse Assoc., No. 3:19-CV-01819, 2021 WL 4193070, at *4 (D. Conn. Sept. 15, 2021) (quoting Shider v. Communications Workers of America, Local 1105 (WYNEX), No. 95-CV-2908, 1997 WL 470112, at *5

In four separate motions, the defendants have moved to dismiss all of Homeowners' claims for a plethora of reasons under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) ("Rule 12(b)(1)" and "Rule 12(b)(6)").  <u>See</u> Def. Gov. Lamont's Mot. to Dismiss (Doc. No. 9); Def. Gov. Lamont's Mem. in Supp. of His Mot. to Dismiss ("Lamont Mem.") (Doc. No. 9-1); Def. Robert Crovo's Mot. to Dismiss (Doc. No. 21); Def. Robert Crovo's Mem. of Law in Supp. of Mot. to Dismiss ("Crovo Mem.") (Doc. No. 21-1); Def. City of Torrington's Mot. to Dismiss and Mem. of Law in Supp. ("Torrington Mem.") (Doc. No. 23); Defs. Sharon and William Gilson's Mot. to Dismiss (Doc. No. 24); Gilson Mem.  Homeowners opposes each of these Motions.  <u>See</u> Objection to Gov. Lamont's Mot. to Dismiss with Incorp. Mem. of Law ("Lamont Opp'n Mem.") (Doc. No. 31); Objection to Robert Crovo's Mot. to Dismiss with Incorp. Mem. of Law ("Crovo Opp'n Mem.") (Doc. No. 33); Objection to City of Torrington's Mot. to Dismiss with Incorp. Mem. of Law ("Torrington Opp'n Mem.") (Doc. No. 34); Objection to Sharon and William Gilson's Mot. to Dismiss with Incorp. Mem. of Law ("Gilson Opp'n Mem.") (Doc. No. 35).  Both Lamont and Crovo have also filed reply memoranda.  <u>See</u> Def. Gov. Lamont's Reply Mem. in Supp. of His Mot. to Dismiss ("Lamont Reply") (Doc. No. 32); Def. Robert Crovo's Reply to Pl. Homeowners Finance Co.'s Objection to Def.'s Mot. to Dismiss ("Crovo Reply") (Doc. No. 36).

---

(S.D.N.Y. Aug. 15, 1997)).  Here, despite the ambiguities in Homeowners' Complaint, "'a fair reading of the complaint demonstrate[s] that plaintiff intended to bring claims against [the Gilsons].'"  <u>Id.</u> (quoting <u>Shider</u>, 1997 WL 470112, at *6).  The Gilsons were named in the caption of the Complaint; Count Seven expressly brings a claim against them; and although plaintiff has yet to file proof of service, the Gilsons have appeared in court and moved to dismiss the claims brought against them.  Taken together, "'a reasonably knowledgeable layperson could conclude, from the circumstances, that [the Gilsons] had been made a party to the lawsuit.'"  <u>Id.</u> at *5 (quoting <u>Nationwide Mut. Ins. Co. v. Kaufman</u>, 896 F. Supp. 104, 109 (E.D.N.Y. 1995)).

For the reasons discussed below, the court grants all four Motions to Dismiss, thereby dismissing Homeowners' Complaint in its entirety.

## II.    ALLEGED FACTS[3]

The labyrinth of events that have brought the parties before this court began in 2014.  At that time, the plaintiff alleges that Alyssa Peterson – who is not a party to this action – owned a parcel of land in Torrington known as 83-87 Harwinton Avenue. Compl. at 3.  Homeowners, in turn, held a first position mortgage on that property, which secured a promissory note of $265,465.00.  Id.

On or about November 26, 2014, defendant Crovo issued an alias tax warrant pursuant to Connecticut General Statutes §12-162 for the collection of municipal taxes due on the Harwinton property from the October 2009 through October 2013 "Grand Lists."  Id. at 7.  The warrant stated that the property would be sold at a public tax sale on February 19, 2015, if the back taxes on the property were not paid by that date.  Id. Prior to the February sale, however, Crovo adjourned the proceeding until March 12, and provided notice to the interested parties.  Id.  He subsequently adjourned the sale twice more, first until April 2, and then again until June 1.  Id. at 8.  On June 1, 2015, the auction finally occurred, and the Harwinton property was sold to Sharon and William Gilson for $30,000.00.  Id.  Ten days later, Crovo executed a deed purporting to convey title to the Harwinton property from Torrington to the Gilsons.  Id.

Homeowners alleges that, pursuant to Connecticut General Statutes §12-157, Crovo was then required to lodge the deed with the town clerk.  Id. at 5.  Under the

---

[3] The alleged facts in this section are taken entirely from Homeowners' Complaint.  The court does not include facts established during the state court proceedings, nor does it include the paragraphs in plaintiff's Complaint where it digresses from factual allegations into legal arguments.

statute, the deed remains in the custody of the town clerk for the next six months during what is known as the "redemption period." Id. During that period, it alleges, title is not conveyed to the buyer, and "the taxpayer or [an]other interested party, such as a lienholder [like Homeowners], may redeem the taxes by paying the entire amount owed to [the] municipality identified in the tax warrant. If the delinquent taxes are redeemed during said period, the tax collector must cancel the [deed] . . . and record a satisfaction on the land records." Id. at 6. In other words, the redemption period gives interested parties, such as Homeowners, the opportunity to pay the back taxes on the property to retain their interest. Title is not conveyed to the buyer from the tax sale until after the redemption period has passed without the delinquent taxes being paid. Id.

Homeowners alleges that prior to the expiration of the redemption period, Peterson filed a civil action in the Superior Court of Connecticut seeking, inter alia, a declaratory judgment voiding the tax sale of the Harwinton property.[4] Id. at 8. She named Torrington, Crovo, and the Gilsons as defendants. Peterson, 2018 WL 3830072 at *1. Homeowners successfully intervened in that action and filed a cross-complaint. Compl. at 9. The parties then cross-moved for summary judgment. Id. 9. Relying on the "uncontroverted material facts" brought forth at the summary judgment stage, the court ruled in favor of the defendants and against Peterson and Homeowners. Id. at 9;

---

[4] Plaintiff appears to misidentify the Docket Number of this civil action in its Complaint. It states the number is "LLI-CV16-6007909-S. Id. at 9 (emphasis added). The correct number appears to be LLI-CV-16-5007909-S. See Peterson v. City of Torrington, No. LLICV165007909S, 2018 WL 3830072 (Conn. Super. Ct. July 25, 2018) (emphasis added).

Peterson, 2018 WL 3830072 at *11.[5]  Homeowners proceeded to file a Motion for

Reargument, which was denied by the court. Compl. at 10.  It then appealed.  Id.

On appeal, the Connecticut Appellate Court held that Homeowners' claims were

moot.  Id. at 13; see also Peterson v. City of Torrington, 229 A.3d 119, 123 (2020).  The

court found that, even if it "were to agree with [Homeowners]" on one of the arguments it

made on appeal (which it did not), "there [was] an unchallenged, alternative ground for

affirming the judgment of the trial court."  Peterson, 229 A.3d at 123-34.  Because

Homeowners had failed to challenge that independent ground, the Appellate Court

found it lacked subject matter jurisdiction over the appeal.  Id. at 124.  Homeowners

then moved for reconsideration en banc and was denied.  Compl. at 13-14.  The

Supreme Court of Connecticut also denied Homeowners' petition for review, and

Homeowners does not appear to have filed a petition for a writ of certiorari in the U.S.

Supreme Court.  Id. at 14; see also Peterson v. City of Torrington, 335 Conn. 921

(2020).

Having exhausted its options in state court, Homeowners filed this action in

federal court on September 1, 2020.  It again named Torrington, Crovo, and the Gilsons

as defendants, and added Lamont as well.  Its claims for relief remain centered on the

tax sale of the Harwinton property – the exact same transaction that was at issue in the

state court proceedings.  Count One is brought against Lamont under section 1983 of

title 42 of the United States Code ("section 1983"), raising claims for violations of the 5th

---

[5] The Superior Court issued its original decision on February 16, 2018.  See Peterson v. City of Torrington, No. LLICV165007909S, 2018 WL 1386146 (Conn. Super. Ct. Feb. 16, 2018).  After granting a Motion for Reconsideration from Crovo, the court issued a Corrected Memorandum of Decision.  It is to the Corrected Decision that the court cites here.  See Peterson, 2018 WL 3830072 at *1.

Amendment Takings Clause, the Commerce Clause, and the Equal Protection Clause of the 14th Amendment.  Count Two is also brought against Lamont and raises claims under the Connecticut Constitution.  Count Three is then brought against Crovo under section 1983.  As with Count One, it alleges violations of the 5th Amendment Takings Clause, the Commerce Clause, and the Equal Protection Clause of the 14th Amendment stemming from the sale of the Harwinton property.  Count Four, similar to Count Two, raises claims under the Connecticut Constitution, this time against Crovo.

Count Five is brought against Crovo as well, under section 242 of title 18 of the United States Code ("section 242").  Section 242 is a criminal statute.  Count Six is brought against Torrington under section 1983, raising the same Takings Clause, Commerce Clause, and Equal Protection claims against the city that were raised against Lamont and Crovo in Counts Two and Four, respectively.  Finally, Count Seven is brought against the Gilsons, again under section 242.[6]

---

[6] Count Seven of Homeowners' Complaint is clearly brought under section 242.  See Compl. at 21.  In its opposition to the Gilsons' Motion for Summary Judgment, Homeowners appears to acknowledge this was an error, and states that it intended to bring Count Seven under section 1983.  See Gilson Opp'n Mem. at 14 ("[r]egrettably, Plaintiff's Complaint appears to allege the Gilsons are liable under 18 U.S.C. § 242.  This was an unfortunate error.  The Plaintiff's Complaint assert[s] a cause of action against the Gilsons under 42 U.S.C. § 1983").

Homeowners, of course, may not amend its Complaint in its opposition memorandum.  See Arias v. East Hartford, No. 3:20-CV-00895, 2021 WL 3268846, at *9 n. 5 (D. Conn. July 30, 2021) (citing Tyrus v. Newton, No:3:13-CV-1486, 2015 WL 1471643, at *5 (D. Conn. Mar. 31, 2015) to hold that "plaintiff may not . . . amend the [ ] complaint in a memorandum in opposition to a motion to dismiss") (internal quotations omitted).  Although plaintiff represents that it will "amend its complaint to address this error following the adjudication of Defendants' motion[s] to dismiss," for the purposes of the pending Motions the court reads Count Seven as being brought under section 242.  Gilson Opp'n Mem. at 14.  It does the same for Count Five.  Even assuming arguendo that Homeowners had attempted to bring Counts Five and Seven under section 1983, the court would still dismiss those claims under Rooker-Feldman, res judicata, and for failure to state a claim upon which relief could be granted.

III.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  A plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. Id.  When determining whether to dismiss for lack of subject matter jurisdiction, a court may "consider[ ] evidence outside the pleadings."  See Amidax Trading Group v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).  A court also "has discretion to hold a hearing to resolve factual disputes that bear on the court's jurisdiction." Saleh v. Sulka Trading, 957 F.3d 348, 353 (2d Cir. 2020).  However, a court must otherwise "accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor."  Id.

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the non-movant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

7

**IV.    DISCUSSION**

    A.    <u>Motions to Dismiss</u>

In four separate Motions, the five defendants have moved to dismiss all of the claims brought by Homeowners for a myriad of reasons under Rule 12(b)(1) and Rule 12(b)(6).  Each defendant argues that the claims against them should be dismissed for lack of subject-matter jurisdiction under the <u>Rooker-Feldman</u> doctrine.  <u>See</u> Lamont Mem. at 6; Crovo Mem. at 6-8; Torrington Mem. at 6-7; Gilson Mem. at 5.  Lamont also argues that both the 11th Amendment and the principle of comity are additional, independent bases to dismiss the claims brought against him.  Lamont Mem. at 4-5.  Crovo contends that, in addition to <u>Rooker-Feldman</u>, Homeowners' claims against him can also be dismissed pursuant to <u>res judicata</u>, and that Count Five can be dismissed because section 242 does not provide a private cause of action.  Crovo Mem. at 8-11.  Torrington, in turn, also moves to dismiss because the claim brought against it is barred by <u>res judicata</u> and, separately, because Homeowners fails to state a claim upon which relief can be granted.  Torrington Mem. at 7-10.  The Gilsons raise these same arguments, while also pointing out that no private cause of action exists under section 242.  Gilson Mem. at 5-7.

Below, the court first analyzes its own subject-matter jurisdiction.  It finds that it lacks jurisdiction over each of plaintiff's claims under the <u>Rooker-Feldman</u> doctrine, and thereby dismisses the Complaint in its entirety.  It also determines that the Eleventh Amendment and <u>res judicata</u> are alternative, independent grounds for dismissing Homeowners' Complaint, and that no cause of action exists under section 242.

Because multiple grounds exist to dismiss the Complaint, the court does not reach the other arguments raised by defendants.

>    B.    Rooker-Feldman Doctrine

The Rooker-Feldman doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments." Dorce v. City of New York, 2 F.4th 82, 101 (2d Cir. 2021). It "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). As such, the doctrine does not have a broad application: it occupies only a "narrow ground" upon which a federal action must be "dismissed for lack of subject-matter jurisdiction." Id.

Rooker-Feldman flows "naturally from the jurisdictional boundaries that Congress has set for the federal courts." Behr v. Campbell, 8 F.4th 1206, 1210 (11th Cir. 2021). District Courts "are courts or original jurisdiction – they generally cannot hear appeals." Id. In particular, they lack jurisdiction to hear appeals from state courts, since "appellate jurisdiction to reverse or modify [such a] judgment is lodged, initially by § 25 of the Judiciary Act of 1789, 1 Stat. 85, and now by 28 U.S.C. § 1257, exclusively in [the Supreme Court]." Exxon, 544 U.S. at 283. Yet, at the same time, Rooker-Feldman does not "override[ ] Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts," nor does it "supersed[e] the ordinary application of preclusion law." Id. at 280-81.

Because Rooker-Feldman "is based explicitly on the statutory limitations of federal district courts' jurisdiction . . . it is not [a] prudential" doctrine. Behr, 8 F.4th at

1210.  Still, it is a "considerably narrow" one that does not preclude a district court from exercising jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court."  Sung Cho v. City of New York, 910 F.3d 639, 644 (2d Cir. 2018); Exxon, 544 U.S. at 293.  So long as the "federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."  Exxon, 544 U.S. at 293 (internal quotations and citations omitted).

The Second Circuit has "articulated four requirements that must be met for Rooker-Feldman to apply: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced."  Dorce, 2 F.4th at 101 (internal quotations and citations omitted).  "Although 'all four requirements must be met in order for Rooker-Feldman to act as a jurisdictional bar . . . the second requirement – that the plaintiff complains of an injury caused by a state-court judgment – is the core requirement from which the other Rooker-Feldman requirements derive.'"  Id. (quoting Sung Cho, 910 F.3d at 646).

In analyzing the second and third prongs – otherwise known as the "substantive" elements of the test – the Second Circuit has "identif[ied] several [additional jurisprudential] principles . . . [to] aid [a court's] analysis."  Id. at 101, 103.  First, it has held that Rooker-Feldman "squarely forecloses . . . [claims that] address[ ] an injury caused by the state court judgment . . . [and] require the district court to review that

judgment." Id. at 104.  Further, the Second Circuit has been careful to adhere to Exxon's reminder that Rooker-Feldman does not necessarily bar "a federal plaintiff [from] present[ing] some independent claim," even if such claim "denies a legal conclusion that a state court has reached in a case to which he was a party." Id. (emphasis added).  In doing so, it has differentiated between a plaintiff's "'alleged injuries [that] were merely ratified by the state-court judgments rather than caused by them.'" Id. (quoting Sung Cho, 920 F.3d at 641) (emphasis in original).  While the latter satisfy the second prong of the Rooker-Feldman test, the former fall short and therefore do not divest a federal district court of jurisdiction. Id. "In other words, plaintiffs are permitted to seek damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment." Id.

This distinction is further clarified by the case law applying it.  For instance, in Sung Cho, the Second Circuit found the second prong had not been met and that Rooker-Feldman did not apply.  In that case, plaintiffs had been subject to eviction based on New York City's Nuisance Abatement Law. Sung Cho, 920 F.3d at 641.  The City brought eviction proceedings in a state forum, and the parties "agreed to settle [those] proceedings . . . rather than to litigate the nuisance charges." Id. The settlement agreements were then "'so-ordered' by state-court judges." Id. Plaintiffs subsequently brought a section 1983 action in federal court, alleging that, in various ways, "they [had been] coerced . . . into signing settlement agreements waiving various constitutional rights to avoid eviction." Dorce, 2 F.4th at 104.  In holding that Rooker-Feldman did not apply, the court recognized that the claims the plaintiffs had brought in federal court were independent of the state-court proceedings.  "[A]t heart," the court

11

reasoned, the plaintiffs' Complaint was "about the <u>agreements themselves</u> and the conduct that led to them – not the judgments so-ordered by the state court." <u>Sung Cho</u>, 920 F.3d at 646 (emphasis in original).  And "even though the settlement agreements were <u>ratified</u> by state court judges," such "mere 'ratification'" fell short of the state court judgment itself <u>causing</u> the harm.  <u>Dorce</u>, 2 F.4th at 104 (emphasis added); <u>Sung Cho</u>, 920 F.3d at 647.

In reaching this conclusion, the Second Circuit further articulated how the distinction between a state court causing a harm, as opposed to merely ratifying it, was crucial for preserving the narrow boundaries of <u>Rooker-Feldman</u>.  In cases in the latter camp, the plaintiff does "not argue that the state courts committed any error." <u>Sung Cho</u>, 920 F.3d at 647.  Instead, the "claims alleg[e] harm flowing from wrongful conduct" leading to the state-court judgment, and "the complaint attacks [that] conduct itself."  In circumstances where this is the case, such a "claim does not function as a <u>de facto</u> appeal." <u>Id.</u>  The plaintiffs in <u>Sung Cho</u> were "attempting to remedy an alleged injury caused when, prior to any judicial action, they were coerced to settle, not an injury that flows from a state-court judgment." <u>Id.</u> at 649.  In permitting such a claim to proceed, the court reasoned, it did "not risk turning [the] federal district courts into quasi-appellate courts sitting in review of state-court decisions." <u>Id.</u>

In contrast, the Second Circuit held that "some, but not all" of the claims brought by plaintiffs in <u>Dorce</u> were barred by <u>Rooker-Feldman</u>.  <u>Dorce</u>, 2 F.4th at 101.  Similar to the case at hand, plaintiffs in <u>Dorce</u> had their real property foreclosed and sold under New York City's Third Party Transfer ("TPT") program due to unpaid back taxes on the property.  <u>Id.</u> at 87.  The Second Circuit reviewed the dismissal of five of the plaintiffs'

claims under Rooker-Feldman.  First, it held that their "takings claim[ ] . . . alleg[ing] that their properties were taken in violation of the administrative regulations governing the TPT program" was indeed barred.  Id. at 105.  The second prong was met there "because the injury Plaintiffs complain of is the loss of their property, which was caused by the state court judgments that divested them of that property.  By effecting the divestiture of Plaintiff's interest in their property, the state court judgments thus directly inflicted the injury complained of."  Id. (emphasis added).  In addition, the state court had itself found "that the City had complied with the administrative regulations."  Id. (emphasis in original).  "To conclude otherwise," the court observed, "the district court would be required to review that state court's decision and determine, impermissibly, whether [it] was valid."  Id.  Because "Plaintiffs would need to persuade the district court that the state court had erred . . . in order to prevail," Rooker-Feldman applied.  Id.

However, the court found that Rooker-Feldman did not divest the court of jurisdiction when it came to the plaintiffs' "second takings claim – that their property was taken without just compensation because they were not compensated for the excess value of the property" beyond what they owed in taxes.  Id.  There, plaintiffs had alleged an injury that arose from the City's improper decision to include the properties in the TPT program in the first place, along with the program's "allegedly inadequate mechanism for seeking compensation for the excess value of the property following foreclosure."  Id.  Because "[t]hat injury was caused not by the judgment of forfeiture, but by the City's actions following upon the forfeiture," Rooker-Feldman was not jurisdictional bar.  The court held the same for the plaintiffs' Equal Protection claim, which alleged that the decision to target their properties in the first place had been

discriminatory.  Id. at 106.  It also concluded that plaintiffs' two Due Process claims concerning inadequate notice were merely ratified by the in rem state-court proceedings, not caused by them.

Taken together, these cases delineate the boundaries of Rooker-Feldman – in particular, the distinction between a state court causing an injury as opposed to merely ratifying it.  Below, the court applies the doctrine to Homeowners' claims in the present action.  Because Rooker-Feldman is "a narrow and limited doctrine," doing so "requires a . . . targeted . . . claim-by-claim approach."  Behr, 8 F.4th at 1213. As such, the court examines each count brought by Homeowners in turn.

### 1.   Counts One and Two Against Lamont

Counts One and Two, brought against Lamont, are paradigmatic examples of claims to which Rooker-Feldman applies.  Homeowners alleges, through section 1983, violations of the Fifth Amendment Takings Clause, the Commerce Clause, and the Equal Protection Clause of the Fourteenth Amendment in Count One.  In Count Two, it brings claims under Article First, Sections 8, 11, and 20 of the Connecticut Constitution. Crucially, the harm Homeowners complains of is the state court judgment itself.  See Compl. at 16-17.  The Complaint asserts that the state court's "dismiss[al] [of its] claims without adjudicating the claims on the merit[s]" is the injury that caused all six of the constitutional violations.[7]  Id.  Homeowners reiterates this point in its Memorandum, arguing that it has brought a "claim against [Lamont] alleging the Plaintiff suffered

---

[7] Plaintiff's claim that the state court dismissed its claims without reaching the merits is incorrect. Although Homeowners' appeal was dismissed as moot, the trial court issued a lengthy opinion ruling against Homeowners at the Summary Judgment stage.  See Peterson, 2018 WL 3830072.

injuries <u>caused by the judgment of the Connecticut state court</u>."  Lamont Opp'n Mem. at

12 (emphasis added).

In its Memorandum, Homeowners concedes that three of the four prongs of the

Second Circuit's <u>Rooker-Feldman</u> test have been met.  In particular, it does not dispute

that it lost in state court,[8] that the state-court judgment was rendered before the current

federal court proceedings began, or that it is complaining about injuries caused by a

state-court judgment.  <u>Id.</u> at 13.  Instead, it hinges its opposition on the third prong not

being satisfied because it does not "invite district court review and rejection of [the state-

court judgment]."  <u>Dorce</u>, 2 F.4th at 101 (internal quotations and citations omitted).

Instead, Homeowners attempts to elude <u>Rooker-Feldman</u> by arguing that it does not

"allege[ ] that the underlying state court judgment should [be] rejected or amended.

Rather, the Plaintiff's cause of action is purely declaratory in nature – it seeks

adjudication of the legal effect of said [judgment] and how it affects the rights of the

parties to this case.  Stated differently, the Plaintiff's cause of action does not seek to

effectively defeat or negate the underlying state judgment; the Plaintiff seeks to obtain a

judicial order from this court ascertaining its downstream effects."  Lamont Opp'n Mem.

at 13 (internal citations omitted).

Homeowners' arguments fall short for two reasons.  First, as Lamont points out,

plaintiff badly misrepresents the relief it is seeking from this court.  Contrary to the

assertions in its Memorandum that it seeks "purely declaratory" relief, Homeowners'

---

[8] Although Lamont was not a party to the state court action, the Second Circuit has been clear
that this does not preclude the first prong from being met or, more broadly, the application of <u>Rooker-
Feldman</u>. <u>See</u> <u>Dorce</u>, 2 F.4th at 102 ("[t]he mere fact that Plaintiffs were not named parties to the state
action against the property does not abrogate the operation of <u>Rooker-Feldman</u>").

Complaint does not even specifically mention such relief, let alone cabin its demands to declaratory judgment.  Compl. at 22 (listing demands for relief and including monetary damages, costs, attorney's fees, punitive damages, and other and further relief as the court may deem proper).

Second, regardless of whether Homeowners seeks declaratory relief or damages, the nature of its request – that this court "adjudicate the legal effect" of the state court judgment – is precisely the type of "de facto appeal" that Rooker-Feldman forbids.  Sung Cho, 920 F.3d at 647.  Plaintiffs have not brought any independent claim against Lamont – they complain only of the state-court judgment itself and the injuries to Homeowners that flowed from it.  To grant Homeowners any relief on Count One or Two, this court would be required to "review that state court's decision and determine, impermissibly, whether the state court judgment was valid."  Dorce, 2 F.4th at 105.  Nor does Homeowners' argument that it only seeks adjudication – but not rejection – of the state-court judgment change this conclusion, as it is logically incoherent.  Homeowners alleges various injuries caused by the state-court ruling and asks this court to provide relief in some form from that judgment.  "[I]n order to prevail," Homeowners would naturally have to "persuade [this court] that the state court had erred."  Id.  When this is the case, "the third Rooker-Feldman requirement . . . [is] satisfie[d]," because "the federal court is in effect being asked 'to review the state proceedings and determine that the [ ] judgment was issued in error.'"  Id.; Conrad v. U.S. Bank Nat'l Ass'n as Tr. for Residential Asset Sec. Corp., Home Equity Mortg. Asset-Backed Pass-Through Certificates, Series 2006-EMX8, No. 3:19-CV-01720, 2020 WL 5258970, at *4 (D. Conn

Sept. 3, 2020) (quoting <u>Vossbrinck v. Accredited Home Lenders, Inc.</u>, 773 F.3d 423, 427 (2d Cir. 2014)).

    Accordingly, because all four prongs of the <u>Rooker-Feldman</u> test have been met, Counts One and Two of Homeowners' Complaint against Lamont are dismissed in their entirety.

        2.     Counts Three, Four, and Five Against Crovo

    The claims brought against Crovo differ from the claims brought against Lamont in that, at least on their face, they appear to be styled as arising from the sale of the property itself, rather than the state-court judgment upholding the sale.  This distinction, however, is not always clear throughout Homeowners' Complaint and its opposition to Crovo's Motion to Dismiss.  On the one hand, Homeowners alleges that, "[a]s a direct result of Robert Crovo acting and/or purporting to act as an agent of defendant City of Torrington, the defendant, Robert Crovo" violated plaintiff's rights under the Takings Clause of the Fifth Amendment, the Commerce Clause, and the Equal Protection Clause of the Fourteenth Amendment in Count Three; Article First, Sections 8, 11, and 20 of the Connecticut Constitution in Count Four; and section 242 in Count Five. Compl. at 17-20.  These claims appear to be derived entirely from Crovo's actions in initiating the tax sale and transferring the property to the Gilsons, as Homeowners makes no other allegations about his conduct.  On the other hand, Homeowners spends significant time in its Complaint detailing the state-court proceedings and highlighting what it believes to be deficiencies in the reasoning of both the state trial and appellate courts.  Compl. at 8-14.  And, in its Memorandum opposing Crovo's Motion to Dismiss, it again argues that it is "assert[ing] . . . [a] claim against the Defendant[ ] alleging the Plaintiff suffered injuries <u>caused by the judgment of the Connecticut state court</u>."  Crovo

Opp'n Mem. at 9 (emphasis added).  It also repeats its assertion that, in its claims against Crovo, it is "seek[ing] adjudication of the legal effect of [the state-court] judgment and how it affects the rights of the parties to this case." Id. at 10.

But to the extent that Homeowners seeks to rely on this distinction to avoid the Rooker-Feldman doctrine, it is unavailing.  As a preliminary matter, the first and fourth prongs of the test – that Homeowners lost in state court and that the state-court judgment was rendered prior to the start of the district court proceedings – remain met. Homeowners concedes this and, as it did in its opposition to Lamont's Motion to Dismiss, also concedes that the second prong – that plaintiff complains of injuries caused by a state-court judgment – is satisfied.  Crovo Opp'n Mem. at 9-10 (stating explicitly that Homeowners' Complaint against Crovo "alleg[es] the Plaintiff suffered injuries caused by the judgment of the Connecticut state court" and arguing that Rooker-Feldman does not apply only because the third prong of the test is not met).

The court agrees with the parties that the second prong is met.  In Dorce, the Second Circuit held that, when "the injury [a] Plaintiff[ ] complain[s] of is the loss of their property, which was caused by the state court judgments that divested them of that property," the second prong is met, as "the state court judgments . . . directly inflicted the injury complained of."  Dorce, 2 F.4th at 105.  The court distinguished those claims from others that complained of alleged injuries independent of the property loss, as those injuries had merely been ratified by the state-court judgment, rather than caused by it.  Id. at 105-08.  Here, Homeowners does not complain of any injuries beyond the sale of its property and the state-court judgment upholding the sale, nor does it allege

any misconduct by Crovo in procuring the state court judgment.[9]  Unlike in Dorce, where plaintiffs alleged that "the TPT Program operate[d] to transfer properties to chosen partners to advance housing policy goals and reward political allies," and the decisions to "target th[ose] properties" in the first place were "discriminatory," Homeowners does not make any claims of injury beyond the sale of the Harwinton property and the results of the state-court proceedings challenging the sale. Accordingly, because the harm Homeowners complains of was caused by the state-court judgment rather than merely ratified by it, the second prong is indeed met.

Finally, the third prong of the test is also satisfied.  Homeowners has explicitly asked this court for "a judicial order" that "review[s] and adjudicat[es] the effect of the state court judgment."  Crovo Opp'n Mem. at 9-10.  "[A]t heart," its claims against Crovo are about "the judgments so-ordered by the state court."  Sung Cho, 910 F.3d at 646. For the same reasons articulated above in Section IV.B.1, ruling for Homeowners on its claims against Crovo would necessarily require this court "to review the state

---

[9] To be sure, Homeowners does complain that, in initiating the tax sale of the Harwinton property, Crovo failed to follow the requirements of Connecticut General Statutes §12-157 and, relatedly, that he did not have the authority to sell the property because Crovo himself had already paid Torrington the overdue taxes and his contract with Torrington had expired before the sale.  Compl. at 5-8.  Yet these are not independent claims of injury or misconduct.  They simply regurgitate the arguments Homeowners made in the state court – arguments that the state court considered, assessed, and ultimately rejected in ruling against Homeowners and upholding the sale of the property.  See Peterson, 2018 WL 3830072 at *16-19 (rejecting Homeowners' argument that Crovo did not have the authority to act as tax collector on the day of the sale because it occurred after his contract with the City had expired, since his contract explicitly permitted him to, "'upon the expiration of the terms of this agreement . . . retain all tax collector powers so as to permit him to continue to collect those unpaid bills which are due to him'"; noting that the Special Act under which Crovo carried out his authorities "contemplated that [he] would advance the City taxes . . . [and then] pursue the unpaid taxes," thus rejecting Homeowners' argument that the tax sale was invalid because Crovo had already paid Torrington the taxes due on the property; and ultimately holding that "[i]n this case, §12-157 permits the [Harwinton] Property to be sold, legally, under §12-159, to satisfy the taxes at issue").

Thus, the misconduct that Homeowners complains of on Crovo's part here is precisely the same misconduct that it alleged in the state case.  Homeowners has therefore failed to "present[ ] some independent claim" other than injuries caused by the state court judgment.  Exxon, 544 U.S. at 293.

proceedings and determine that the [ ] judgment was issued in error." <u>Vossbrinck</u>, 773 F.3d at 427.

For these reasons, Counts Three, Four, and Five against Crovo are dismissed in their entirety under <u>Rooker-Feldman</u>.

3.   Count Six Against Torrington and Count Seven Against the Gilsons

Counts Six and Seven are identical to Counts Three and Five, respectively, with the exception that they are brought against Torrington and the Gilsons instead of Crovo. In addition, Homeowners appears to have mostly copied its argument opposing <u>Rooker-Feldman</u> from its Memorandum opposing Crovo's Motion to Dismiss and pasted it into its Memoranda opposing the Motions to Dismiss filed by Torrington and the Gilsons, including the language about its claims against "Defendant-Crovo." <u>Compare</u> Crovo Opp'n Mem. at 9-11, <u>with</u> Torrington Opp'n Mem. at 9-11, <u>and</u> Gilson Opp'n Mem. at 9-10.   As Homeowners has substituted defendants but otherwise brought identical claims and made identical arguments, the court finds that <u>Rooker-Feldman</u> applies for the same reasons articulated above. <u>See</u> <u>supra</u> at Section IV.B.2.

The Motion to Dismiss is granted as to Count Six against Torrington and as to Count Seven against the Gilsons.

C.   <u>Eleventh Amendment</u>

Lamont also argues that the Eleventh Amendment is an independent, alternative ground for dismissing Homeowners' claims against him.   Lamont Mem. at 1-5.   "The Eleventh Amendment generally bars suits in federal court by private individuals against non-consenting states.   <u>Leitner v. Westchester Community College</u>, 779 F.3d 130, 134 (2d Cir. 2015).   This includes "the award of money damages against state officials in their official capacities." <u>Ford v. Reynolds</u>, 316 F.3d 351, 354 (2d Cir. 2003).

Homeowners argues that its claims against Lamont fall under the Ex parte Young exception to sovereign immunity, and as such that the Eleventh Amendment is not a jurisdictional bar to its action against Lamont.  Lamont Opp'n Mem. at 9-11.

Homeowners' argument is implausible on its face.  "[A]pplication of the [Ex parte] Young doctrine is straightforward."  In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007).  "A plaintiff may invoke this exception provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective."  Nat'l Ass'n for Advancement of Colored People v. Merrill, 939 F.3d 470, 475 (2d Cir. 2019).  Homeowners' Complaint does neither.  It alleges no ongoing violation of federal law, and its argument that it seeks only "prospective declaratory relief against Governor Lamont" is belied by the very claims for relief it asserts in his Complaint.  Lamont Opp'n Mem. at 9-10; supra Section IV.B.1.

Accordingly, the Eleventh Amendment is a separate, additional ground to dismiss Homeowners' claims in Counts One and Two against Lamont.

D.    Res Judicata

Finally, Crovo, Torrington, and the Gilsons also argue the claims against them should be dismissed pursuant to res judicata.  Crovo Mem. at 8-10; Torrington Mem. at 7-8; Gilson Mem. at 5.  "Under the doctrine of res judicata, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Washington v. Blackmore, 468 F. App'x 86, 87 (2d Cir. 2012) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)).  "In considering the preclusive effect of a state court judgment on a subsequent federal action . . . [a court] consult[s] the preclusion laws of the state in which the judgment was issued."  Ross v. New Canaan Environmental Com'n, 433 F. App'x 7, 8

21

(2d Cir. 2011) (citing Migra v. Warren City Sch. Dist. Bd. Of Educ., 465 U.S. 75, 81 (1984)).

"In order for res judicata to apply" under Connecticut law, "four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." Giolametti v. Michael Horton Associates, Inc., 332 Conn. 67, 75 (2019) (internal quotations and citations omitted). With regard to the fourth element, Connecticut "has adopted a transactional test for determining whether an action involves the same claim as a prior action such that it triggers the doctrine of res judicata." Weiss v. Weiss, 297 Conn. 446, 461 (2010). "Put simply," this requires court to look to "whether the prior and present actions stem from the same transaction." Id. Res judicata is thus operates to bar claims based on the same transaction that "were, or could have been, raised in the prior action." Soules v. Connecticut, Dep't of Emergency Serv. and Pub. Prot., 882 F.3d 52, 55 (2d Cir. 2018).

Homeowners makes two arguments for why res judicata does not apply here, neither of which are availing. First, it contends that "the underlying merits of [its] claims were never adjudicated by the Connecticut State courts." Crovo Opp'n Mem. at 11; Torrington Opp'n Mem. at 11; Gilson Opp'n Mem. at 11. As discussed above, supra n. 7, this is simply inaccurate: the state trial court ruled on the merits against Homeowners at the summary judgment stage. Second, Homeowners argues that its current action "alleges claims that are separate and distinct from those raised in the state courts." Crovo Opp'n Mem. at 11; Torrington Opp'n Mem. at 11; Gilson Opp'n Mem. at 11. As

defendants point out, this argument misunderstands the fourth prong of the test.  Each of the claims against Crovo, Torrington, and the Gilsons arose out of the same transaction – the tax sale of the Harwinton property – and each claim "could have been [ ] raised in the prior action."[10]  Soules, 882 F.3d at 55.

Thus, as all four prongs of the test are met, res judicata is a separate, additional ground to dismiss Counts Three through Seven.

## V.    CONCLUSION

The four Motions to Dismiss are each granted, and Homeowners' Complaint is dismissed in its entirety.  Counts One and Two against Lamont are dismissed pursuant to both the Rooker-Feldman doctrine and the Eleventh Amendment.  Counts Three, Four, and Five against Crovo are dismissed pursuant to Rooker-Feldman and res judicata, as is Count Six against Torrington and Count Seven against the Gilsons. Counts Five and Seven are also dismissed because no cause of action exists under section 242.  Counts Five and Seven are dismissed with prejudice, because it is this court's view that, as a matter of law, no cause of action can be sustained under section 242.  The dismissal of Counts One, Two, Three, Four, and Six is without prejudice to Homeowners filing a proposed amended complaint if – and only if – it has a good faith belief that the amended complaint can cure the deficiencies identified by the court in this

---

[10] State courts have concurrent jurisdiction with federal courts over claims brought under section 1983.  Zizka v. Water Pollution Control Auth. of Town of Windham, 195 Conn. 682, 687 (1985) (citing Maine v. Thiboutot, 448 U.S. 1, 3 n. 1 (1980)).  As such, Counts Three and Six could have been brought in the state action.  Count Four is brought under state law, and thus could have been brought in the state court action as well.  Counts Five and Seven are brought under section 242.  Section 242 in a criminal statute that does not provide a cause of action.  See Hill v. Didio, 191 F. App'x 13 (2d Cir. 2006) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994) to hold that "there is no private right of action under section 242").  Because Homeowners' section 242 claims arise out of the same transaction as the claims at issue in the state proceedings, they are barred by res judicata. However, the court notes that they could be independently dismissed, and they hereby are dismissed, under 12(b)(6) for failure to state a claim upon which relief could be granted.

Ruling.  If it chooses to do so, it must file the Motion to Amend within **14** days of this

Ruling.

**SO ORDERED.**

       Dated at New Haven, Connecticut this 20th day of September 2021.


                            /s/ Janet C. Hall_____
                            Janet C. Hall
                            United States District Judge